All right, our next case for this morning is Thomas Ostrowski against Lake County, Indiana and others. And I believe we are first going to hear from Mr. Jacobs. Thank you, Your Honor, and may it please the court. The fundamental error in the decision below is that the court misapplied principles of Indiana contract law. Courts must give words their plain, ordinary meaning. As the Indiana Supreme Court recently explained, Indiana courts firmly defend parties' freedom to contract by enforcing their chosen terms. That means that courts must interpret a contract to give each word effect and cannot add or subtract words. So that's a very common principle of contract law. But what I wonder is, under the theory that you are urging, where there is a difference between an entitlement to seek attorney's fees and a substantive right to get them, I mean, what's the point of even putting in a clause that says the prevailing party shall be entitled to seek fees? You can always ask, right? There are some exceptions to the American rule. There are occasionally statutes. So it seems that your argument suggests to us that this part of the contract was just pointless. Well, we wouldn't say that it's pointless. The provision in the contract reminds Mr. Ostrowski that if he proceeds in litigation against the defendants again, he might have to pay fees, and vice versa. And many provisions in contracts restate or are coextensive with other statutory provisions of law. In this very contract, the parties agreed that if Mr. Ostrowski pursued ADEA claims that accrued after the time that the contract was entered into, the contract would not bar those claims. That's a provision of the ADEA. There's another provision of the contract that says that Mr. Ostrowski cannot engage in libel as against the defendants. That's part of Indiana common law. So we would not say that it's meaningless. It is simply coextensive with another provision of law. And the court cannot rewrite the contract to take the word seek out and put in something else. Indiana courts simply interpret the words that the parties used. Mr. Jacobs, could I ask you whether you think we may proceed with this case at this point, with this appeal, given Mr. Ostrowski's bankruptcy filing? Well, given the bankruptcy filing, I would say yes. In bankruptcy, the bankruptcy court needs to determine what to do with all of the outstanding claims against Mr. Ostrowski. This is a pretty big one. It's a bit north of $200,000. And it would be helpful, presumably, for the bankruptcy court to know whether Mr. Ostrowski is liable or not. My concern is about the automatic stay. Yeah, here's the complicated problem there. If the bankruptcy court were to lift the automatic stay, and they frequently do for the very reason that you state, we would be free to go ahead. But I gather Mr. Ostrowski himself has had a couple of different thoughts about that, that he's moved for lifting the stay, that he's moved to revoke his motion to lift the stay. So if the bankruptcy court decides, in the end, not to lift the stay, what do we do? The amicus does not take a position on what the Seventh Circuit should do. All right, fair enough. So I have another question for you that relates back to what I'll call Ostrowski 1, because we've seen Mr. Ostrowski before. If we were to decide, or how do you see the validity or the applicability of the 2017 settlement agreement to Mr. Ostrowski's suit over his pension benefits as relating or not relating to this fee dispute? Well, if this court decides for Mr. Ostrowski entirely in the other appeal, so that none of the defendants remain as prevailing defendants, then this case would be mooted. If this court decides that. No, we would have to set it aside. Yes. We would have to set aside the order. The fee order, yes. So that's importantly not moot. That is a judicial act that we would take favorable to Mr. Ostrowski. OK, or to continue, suppose we don't rule for him in every respect. So if some of the defendants remain as prevailing defendants, for example, Lake County, and the other defendants are not prevailing defendants, then this court could still decide this issue. And it would have to go back to the district court regardless of the disposition, because the district court would need to apportion fees if fees were still due among the remaining, or to the prevailing defendants. Distinguish between fees for the prevailing defendants and the defendants that have not prevailed. Of course, if this court decides against Mr. Ostrowski entirely in the other case, then this case is very important and may determine. And the issue that you're raising comes to the fore. That's right. So then let's go there. If we were to adopt your view of SEEK, SEEK as a procedural right only, what effect do we give to the final sentence of the fees provision, which says it doesn't apply to any action or claim he may assert under any federal, state, statute, or law that prohibits the recovery of such fees, costs, and expenses by the release parties? What effect do we give that? We think that that final sentence is even more evidence for our claim that the paragraph as a whole is coextensive with the background statutory law that Mr. Ostrowski sued under. The sentence says that if that background statute prohibits fees, then fees cannot be awarded. We think that if that statute allows fees, then that would have to be the basis for fee shifting. So the whole provision is just one big reminder. It is coextensive with existing procedures, like Rule 54 and the Federal Rules of Civil Procedure. The court below simply said that it was a distinction without a difference how to interpret the language in the contract. If we interpret that to mean that the court adopted the appellee's interpretation, then the court erred as a matter of Indiana contract law. If we interpret that to mean that the court adopted Mr. Ostrowski's interpretation and awarded fees anyway, then the court erred by not applying the applicable fee shifting provisions at issue. In Section 1988 cases and ADA cases, the court has to follow Christiansburg Garment, which says that prevailing defendants may only be awarded fees if the plaintiff proceeded in a frivolous case or the case was without foundation or so forth. And the district court did not make findings that would support fee shifting under the statutes or fee shifting under Rule 11 or any other court rule. We ask that the court reverse the district court's opinion. I will reserve my remaining time for rebuttal unless there are other questions. Just one quick thing, Mr. Jacobs. I don't know who's appearing in which courts. So I just want to make sure that there is a channel open from Judge Lindquist's decision or hearing next week on the stay to this court. We've been in contact with Mr. Ostrowski's bankruptcy attorney. So we'll find out what happened, what happens next week. That's right. Thank you. Thank you. All right, Mr. Carwith. Thank you. Good morning. May it please the court. Mark Carwith for the Appalachia Lake County, Lake County Treasurer, Sheriff, and the Lake County Pension Committee. So are you in any way involved with what's going on in the bankruptcy court? Well, certainly to the extent my clients have been listed as creditors, we are aware of it. I am not personally involved in the bankruptcy proceeding. I do not pretend to know anything about bankruptcy other than the bare minimum and would defer to colleagues, including those at my firm who are bankruptcy lawyers. So what I'm interested in is some assurance that this court will get a status report from the parties, which I think is where Judge Hamilton was going, after the bankruptcy judge resolves this matter, which may happen right on the spot or it may be taken under advisement for some period of time. So if you are all both at least in touch with counsel, I would think you wouldn't need to file the report yourself as long as you arranged for bankruptcy counsel to file it. But we need to know so that we can do what we're supposed to do under the system. Sure, Your Honor. And when we first learned of the bankruptcy, when I received a notice in the mail a couple of weeks after it was filed, we did notify the court because we did understand it was important. And when we learned that his counsel had asked for the stay to be lifted with respect to this appeal, we also brought that to the court's attention because that gave us, my clients, and me a concern. We don't want to be violating an automatic stay. So we even went to the extreme of asking to stay these proceedings. For your sake, Mr. Carr, I'll just say, I think we recognize there's an issue. There is some room for debate about the extent to which we sever out this counterclaim. In essence, as one against the debtor, I'm operating this morning on the assumption that we have jurisdiction to decide our jurisdiction. So if that's any comfort to you and your clients, as well as to other counsel for whom creditors might be upset. Well, we certainly, me personally, will make sure that whatever shows up on that bankruptcy court docket is notified through some sort of a notice by someone. That would be great. In this case, it's interesting because the parties, for the most part, seem to be citing the same rules of statutory construction. You can't ignore a certain language. You've got to give consideration to all the language. You've got to give it the plain meaning. The first point I'd like to make is that the only party that's identified in their briefs, cases that have used this same language, entitled to seek attorney fees, is the appellees. We filed, in our brief, we cited two cases. And the Marigold case and the Jericho case. And those two cases used the fee provision had the exact same language. And those courts applied it as if it was a substantive grant of recovery of attorney fees, not a procedural right. But why doesn't the more straightforward reading of entitled to seek attorney's fees mean that the court might say no? I mean, I don't know whether you think a dollar is fine. But entitled to seek attorney's fees sounds to me like you can ask. Sure. Well, I think it recognizes the truth, the practical truth, that even if this contract said that you're entitled to recover and the other side must pay and had plenty of language. I've seen plenty of contracts that read that way. There would still be room for the district court to make a number of decisions. One would be, are you a prevailing party? That's required. And that's actually language in the agreement here. Two, where there's a contract, as I think both parties have recognized, Matthew's case in the Seventh Circuit, cited in the briefs. It has to be commercially reasonable. So there's another aspect for the court. And then in this particular case, there's a third criteria, that last sentence that says, look, an exception to the attorney fees is that if Mr. Ostrowski brings a claim, it's barred by the release, but it was a claim that arises under a state or federal law that prohibits a defendant from recovering attorney fees, you don't get your attorney fees. So does prohibit mean an express statement in a federal or state law that says no attorney's fees may be awarded? Or does prohibit just mean there's no permission for attorney's fees? Usually, statutes are silent if we're going to follow the American rule. There are cases that have interpreted unilateral attorney fee award provisions as being a statement of public policy prohibiting attorney fees. There is a federal court. There's a number of California decisions, a federal court in California, Alvarez, 2021 West Law, 523-8582. And in that case, it's typically in wage claims and other employment-related contexts that have these unilateral fee provisions. The court says, because it's a unilateral fee provision, that that's a statement that public policy only would allow in those types of cases an attorney fee award for a plaintiff, not a defendant. For failing plaintiff, yeah. I guess maybe I'm just catching up with you, but my concern here is about the extent to which federal courts ought to recognize contracts, in essence, out from under Christiansburg-Garmon. So the Christiansburg decision is one that says that in a prevailing party attorney fee provision, when the defendant wins, that you have to show that it's groundless, frivolous, without foundation, that sort of thing. That certainly is not a prohibition against attorney fees. It's a district standard. It's just an asymmetrical standard, as opposed to just the loser pays. Right. But in this case, one of the arguments that the amicus made was that there aren't any findings that could support that type of a decision. But if you go back and look at the summary judgment decision that Judge Miller issued on the merits, saying that the release applies, he said the clear language in this contract covers all these claims. There's a clear, well-established law that prohibits these claims because of the release. And he said there's no factual basis at all. What if we were to disagree with that, though? I mean, obviously, everything's up for grabs. And I'm not saying we will, but suppose. Well, I think those are factual findings, and that those ought to be given some deference. But if we construed the 2017 settlement agreement as covering disputes outside the scope of his suit over his pension benefits, is it possible that you would still prevail for these fees? Make sure I understand your question. If we look at the 2017, if we look at the settlement agreement as confined to certain subjects and certain things, not the pension dispute, then would there still be a reason for you to prevail in the fee dispute? Does that just say that the 2017 agreement and the language providing for fees is off the table, so we're back to the American rule? I don't think it would be back to the American rule. It would be back to whether or not on the merits of those claims that he brought. And again, the district court didn't make that decision, only decided on the release. But because we're here on a review of a summary judgment previously, and in our briefing, we've said you could go ahead and meet and address the underlying substantive claims, because they were all briefed on summary judgment. If those were, it would seem to me that it would probably, one, be moot or irrelevant, maybe is the better word. Because unless Mr. Ostrowski dismisses his bankruptcy appeal, he's listed this as a debt that he's going to discharge in his plan that has been submitted. So it may not really matter. But from a theoretical standpoint, I certainly think either this court or the district court could award fees based on the claims or on the prevailing party with the frivolous, groundless, baseless. There was one other point that I did want to make. Actually, I'm not even sure I follow you. Say the, let's assume, say we have a split ruling. And we decide on that 2017 settlement agreement that some of the claims are barred and some are not. That each disability payment gives rise to a separate claim. So the ones arising before the 2017 settlement agreement are out, the ones arising after are in. What then is your position on attorney's fees? Well, I think certainly to get to the point of summary judgment, the fees were incurred. And to try to separate maybe some of them for the sheriff or something like that, it was all basically the same legal work that had to be done. But I would imagine that would be probably something for the district court to try to iron out if there was going to be an apportionment or not. But I mean, certainly because we briefed all the issues, then that would be, I don't know if there would be more fees going forward. It would have to depend on what would subsequently happen. No, what I'm saying is you're looking at a fee provision here that talks about a prevailing party. Yes. Are you a prevailing party at that point with a split ruling? What does that mean for your fees? Certainly, some under your hypothesis that there would be some claims out, not. We would be a prevailing party, I believe, if those terms applied by the courts. There was one other point I wanted to make. You can just wrap up your last point. OK. If you look at this fee provision, it is a fee provision that the amicus says it was a reminder. That doesn't make sense because the fee provision doesn't just remind Mr. Ostrowski that if you bring claims and then they're covered and there's a statute that provides an independent basis for attorney fees, it's an attorney fee provision that even gave him the right to bring attorney fee claims. So if you agree with the amicus, that whole concept that Mr. Ostrowski could recover fees, it's the same language entitled to seek attorney fees. If he had to sue to enforce the settlement agreement, that would just be a contract claim. That whole language, therefore, would have no meaning if you apply it just as being some sort of a reminder. OK, thank you very much. Anything further, Mr. Jacobs? I'll give you an extra minute because we went over if you need it. Thank you. I just wanted to respond to the Apoese discussion of those cases Jericho and Marigold. We don't think that those cases should be particularly persuasive. The courts in those decisions do not purport to interpret the contractual language. They just mention the contractual language and there is no discussion of contractual interpretation. So there's no particular reason for them to be persuasive. We think that the closest case here is Poynter, which is in the Southern District of Indiana. There was an ERISA plan where the plan language said, the plan reserves the right to be reimbursed for its court costs and attorney's fees if the plan needs to file suit. And the district court said that this simply reserved the right to seek attorney's fees and whether attorney's fees would be granted would be determined based on the underlying ERISA statute. So we think that's very analogous to this case. There's a provision in the contract that provides a procedural right to seek attorney's fees. The substantive entitlement comes from the underlying cause of action. Do you have a cite for Poynter? Yes. I don't see it in the list of authorities. Is it this South Central Indiana School Trust against Poynter? That's right. P-O-Y-N-E-R. It is 2008 Westlaw, yeah, 115-14951. OK. So Mr. Carwith said that Mr. Ostrowski is also a beneficiary of this language in the contract.  arguing that he doesn't want to be a beneficiary of this. mind losing a potential right to get fees himself if all he has the right to do is ask, should he be the prevailing party? Well, were he to seek fees under the contractual provision and under Rule 54, he would be entitled to fees under Christiansburg garment, which, as you mentioned, is asymmetrical. So there's simply a different standard that would apply to that than to the defendant seeking fees. OK. Thank you. Thank you very much. Thank you for taking this case. And we appreciate the efforts of the clinic. And thanks, of course, also to Mr. Carwith. We will take the case under advisement.